Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ASOCIACIÓN DE RESIDENTES DE BREÑAS ESTATES, INC.<br><br>Peticionaria<br><br>V.<br><br>SUCESIÓN DE WILFREDO MARQUEZ Y OTROS<br><br>Recurrida | TA2025CE00701 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.<br><br>VB2023CV00666<br><br>Sobre:<br>COBRO DE DINERO-ORDINARIO |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Hernández Sánchez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

El 30 de octubre de 2025, la Asociación de Residentes de Breñas Estates, Inc, (Asociación de Residentes o parte peticionaria) compareció ante nos mediante un recurso de *Certiorari*. En primer lugar, nos solicitó la revisión de una *Resolución* que se emitió y notificó el 27 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la moción en *Escrito en Cumplimiento de Órdenes & Moción Para Que se Desestime Reconvención Por Falta de Jurisdicción* presentada por la Asociación de Residentes.

Por otro lado, nos solicitó la revisión de una *Orden* que se emitió y notificó el 7 de octubre de 2025 por el TPI. Mediante dicha *Orden*, el TPI dio por admitido un requerimiento de admisiones cursado a la parte peticionaria y le impuso una sanción de $1,000 por el incumplimiento de una orden para mostrar causa.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

I.

El 5 de septiembre de 2023, la Asociación de Residentes presentó una *Demanda* sobre cobro de dinero en contra de la Sucesión del Sr. Wilfredo Márquez y la Sra. Lágrima Marín, viuda del señor Márquez (parte recurrida).[1] En esencia, alegó que, la parte recurrida era titular en común proindiviso de una porción de una propiedad sita en la Comunidad Breñas en el municipio de Vega Alta, Puerto Rico. Sostuvo que, como comuneros eran miembros de la Asociación de Residentes de dicha comunidad, por lo que estaban obligados a pagar cuotas de mantenimiento y derramas conforme a la asamblea celebrada en el año 2021 y certificado de incorporación de la asociación. Particularmente, arguyó que la parte recurrida adeudaba la suma de $41,700.00 por concepto de cuotas vencidas y no pagadas, $5,000.00 en concepto de honorarios de abogado y, $3,000.00 por concepto de honorarios de abogado por ejecución de la sentencia, costas y gastos del proceso. En virtud de lo anterior, solicitó que la parte recurrida pagase la deuda reclamada.

Así las cosas, el 1 de diciembre de 2023, la Asociación de Residentes presentó una *Demanda Enmendada* a los fines de incluir a la Sra. Carmen Milagros Márquez Marín quien era heredera de la Sucesión Márquez.[2] En respuesta, el 22 de abril de 2024, la Sra. Carmen Milagros Márquez Marín y la Sra. Lágrima Marín presentaron su *Contestación a Demanda y Reconvención* en la cual negaron la mayoría de las alegaciones y presentaron sus respectivas defensas afirmativas.[3]

En su *Reconvención,* expusieron que la Asociación de Residentes entregó la entrada que utilizaban los propietarios de la Comunidad de Breñas y estableció ilegalmente un control de acceso

---

[1] *Véase*, Entrada 1 del apéndice del recurso, SUMAC TA.

[2] *Véase*, Entrada 10 del apéndice del recurso, SUMAC TA.

[3] *Véase*, Entrada 29 del apéndice del recurso, SUMAC TA.

instalando unos portones que únicamente podían abrirlos unos guardias de seguridad, o *beepers*. En consecuencia, establecieron unas cuotas de mantenimiento para dicho control de acceso. Ello sin considerar que compraron la propiedad hacía varias décadas y sin restricciones de acceso. Enfatizaron que, se opusieron al cierre de la comunidad y, resaltaron que, en horas de la mañana estaban forzadas a entrar por el portón designado para visitantes. Mientras que, por la tarde, estaban impedidas de entrar a su residencia. Por todo lo anterior, razonó que, los actos culposos y negligentes de la parte peticionaria causaron daños y perjuicios contra los miembros de la Sucesión Márquez, los cuales excedían de los $300,000.00.

Por su parte, el 22 de mayo de 2024, la Asociación de Residentes presentó su *Contestación a Reconvención*.[4] Allí, negó la mayoría de las alegaciones de la *Reconvención* presentada por la parte recurrida. En lo pertinente, alegó afirmativamente que el señor Márquez participó en vida de la directiva de la Asociación de Residentes y nunca se opuso al control de acceso. De igual forma, aclaró que, a ningún titular se le negaba el acceso a la comunidad. Sin embargo, el carril rotulado "residentes" con portón y control remoto era para el uso y disfrute de los titulares que aportaban mediante las cuotas al mantenimiento del sistema. Sostuvo que todas las demás personas podían acceder a la finca por el carril rotulado "visitantes". Finalmente, indicó que los daños reclamados fueron resultado de un riesgo asumido voluntariamente por la parte recurrida, por lo que procedía desestimar la *Reconvención*.[5]

---

[4] *Véase*, Entrada 36 del apéndice del recurso, SUMAC TA.
[5] El 31 de julio de 2024, el Sr. Luis David Márquez Marín presentó su *Contestación a Demanda*. En esta, negó la mayoría de las alegaciones. Entre sus defensas afirmativas, arguyó que no era miembro de la Asociación de Residentes y que dicha deuda no era exigible. Adicionalmente, esbozó que la *Demanda* de epígrafe formaba parte de un patrón continuo de abusos en contra de la Sucesión Márquez. *Véase*, Entrada 62 del apéndice del recurso, SUMAC TA.

Tras varios trámites procesales los cuales no son necesarios pormenorizar, el 7 de agosto de 2025, la Asociación de Residentes presentó su *Moción Informativa de Academicidad y Para Que se Dicte Orden*.[6] En síntesis, informó al Tribunal que la parte recurrida vendió su participación alícuota en la comunidad Breñas. Por ello, manifestó que, el reclamo de la parte recurrida se tornó académico.

Al día siguiente, la Sra. Carmen Milagros Márquez Marín, por derecho propio y en representación del Sr. Wilfredo Márquez Umpierre, el Sr. Jaime Luis Márquez Umpierre y la Sra. Mayra Michelle Márquez Umpierre presentó su *Moción Informativa, Enmendando Alegaciones y Solicitando Órdenes*.[7] Argumentó que, vendieron la propiedad que tenían en la comunidad Breñas. Además, explicaron que le comunicaron a dicha parte la existencia del caso de epígrafe. Sin embargo, detallaron que proveyeron a los compradores un relevo de responsabilidad legal total por las cantidades reclamadas en el pleito. Así pues, solicitó al Tribunal enmendar las alegaciones de su *Reconvención* a los fines de incluir las alegaciones de su moción. Por último, notificó al Tribunal que la parte peticionaria no contestó un requerimiento de admisiones que se le cursó en septiembre de 2024, por lo que solicitó ordenar a estos a proveer la información solicitada.

Así las cosas, el 26 de agosto de 2025, la Asociación de Residentes presentó su *Escrito en Cumplimiento de Órdenes & Moción Para Que se Desestime Reconvención Por Falta de Jurisdicción*.[8] En esencia, solicitó la desestimación de la *Reconvención* por falta de jurisdicción y legitimación activa de la parte recurrida. A su vez, solicitó que no se autorizara la enmienda a la *Reconvención*, puesto que era improcedente en derecho y no

---

[6] *Véase*, Entrada 143 del apéndice del recurso, SUMAC TA.

[7] *Véase*, Entrada 145 del apéndice del recurso, SUMAC TA.

[8] *Véase*, Entrada 152 del apéndice del recurso, SUMAC TA.

cumplía con la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V., R. 13.1. Examinadas las posturas de las partes, el 27 de agosto de 2025, el TPI emitió una *Orden* en la cual determinó lo siguiente:

> [...] se declara no ha lugar la desestimación de la reconvención presentada por la parte demandante, pues de sus argumentos no ha quedado claro por qué el tribunal no tiene jurisdicción y que la parte demandada no tiene legitimación activa. Se declara no ha lugar la solicitud de enmienda a las alegaciones de la parte demandada para incluir reclamaciones nuevas en esta etapa de los procedimientos. En consecuencia, se declaran no ha lugar las órdenes solicitadas a favor de terceros que no son parte en el pleito.[9]

Inconforme, el 11 de septiembre de 2025, la Asociación de Residentes presentó su *Moción de Reconsideración*.[10] En esta, reiteró que, la parte recurrida carecía de legitimación activa para llevar sus reclamos en la *Reconvención*, puesto que vendió su propiedad. Así pues, su interés en la administración de la propiedad o los supuestos daños futuros eran inexistentes, debido a que no eran dueños de la propiedad en controversia. Por ello, razonó que sus reclamos eran académicos y procedía desestimar la *Reconvención*.

Por su parte, el 30 de septiembre de 2025, la parte recurrida presentó su *Moción en Oposición a Solicitud de Reconsideración*.[11] En esencia, planteó que, la presunta falta de legitimación activa hacía referencia erróneamente a reclamaciones por daños futuros que no fueron presentados como parte de la *Reconvención*. Posteriormente, el 7 de octubre de 2025, el TPI emitió una *Orden*, que se notificó el mismo día.[12] Allí dispuso lo siguiente:

> De no haberse notificado las contestaciones a requerimiento de admisiones cursado por la codemandada Carmen Marín el 8 de septiembre de 2025, en el término provisto en las reglas de procedimiento civil, se da por admitido. Ante el incumpliendo con la orden de mostrar causa emitida el 30 de septiembre de 2025, se impone una sanción de $1,000.00 a la representación legal de la parte

---

[9] *Véase*, Entrada 153 del apéndice del recurso, SUMAC TA.

[10] *Véase*, Entrada 160 del apéndice del recurso, SUMAC TA.

[11] *Véase*, Entrada 163 del apéndice del recurso, SUMAC TA.

[12] *Véase*, Entrada 167 del apéndice del recurso, SUMAC TA.

demandante a favor del Gobierno de Puerto Rico. El cheque o giro deberá hacerlo a nombre de la Secretaria del Tribunal. Cumpla con la orden de 27 de agosto de 2025 y el pago de sanciones en 15 días, so pena de sanciones adicionales, las cuales podrán incluir la desestimación. Notifíquese a los abogados y a la parte demandante.

En desacuerdo, el 22 de octubre de 2025, la Asociación de Residentes presentó una *Solicitud de Reconsideración*. Detalló que, el requerimiento de admisiones era defectuoso y no procedía darlo por admitido. Ello pues, la parte recurrida incumplió con la certificación conforme lo requería la Regla 34.1 de Procedimiento Civil, 32 LPRA Ap. V., R. 34.1. El 22 de octubre de 2025, el TPI emitió una *Resolución Interlocutoria* que se notificó al día siguiente, declarando No Ha Lugar la moción de reconsideración.

Aún en desacuerdo, el 30 de octubre de 2025, la parte peticionaria presentó el recuso de epígrafe que nos ocupa y formuló los siguientes señalamientos de error:

**Erró el Tribunal de Primera Instancia al no desestimar la reconvención, a pesar de que la parte reconviniente vendió su participación en la comunidad pertinente al caso, lo que tornó sus reclamos en académicos y la privó de legitimación activa.**

**Erró el foro primario al no desestimar una reconvención que es un ataque colateral tardío a un acuerdo entre comuneros.**

**Erró el Tribunal de Primera Instancia al dar por admitido un requerimiento de admisiones a pesar de que: (a) la peticionaria solicitó oportunamente una prórroga para contestarlo; (b) el requerimiento es uno que incumple con la Regla 33 de Procedimiento Civil; (c) la parte recurrida no cumplió con la Regla 34.1 de Procedimiento Civil; y (d) la admisión tácita, bajo las circunstancias del caso, atenta contra la justicia sustancial y el principio de que los pleitos se vean en sus méritos.**

**Erró el Tribunal de Primera Instancia al imponer una sanción de $1,000.00 a la representación legal de la peticionaria, sin tomar en consideración el contexto procesal del caso, que demostraba que la conducta de la peticionaria no ha sido frívola ni temeraria.**

Atendido el recurso, el 4 de noviembre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 10 de

noviembre de 2025, para presentar su oposición al recurso. Oportunamente, el 9 de noviembre de 2025, su *Oposición a Expedición de Auto de Certiorari Civil* en la cual negó que el TPI cometió los errores que la parte peticionaria le imputó.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el recurso ante nuestra consideración. *Veamos.*

II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter

dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, s*upra,* es determinante por sí solo para el ejercicio de jurisdicción, y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra. La norma vigente es que un tribunal apelativo solo intervendrá con las determinaciones

discrecionales del Tribunal de Primera Instancia, cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

### III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

### IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones